**Efrain REYNAGA, Plaintiff–Appellant,**

v.

**SUN STUDS, INC., a Washington corporation; Howard Sohn; Clay Needham, Defendants–Appellees.**

No. 00–35822.
D.C. No. CV–99–6195–MRH.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 12, 2001.

Decided Oct. 11, 2001.

Before THOMPSON, TASHIMA, and GRABER, Circuit Judges.

## MEMORANDUM *

Appellant Efrain Reynaga ("Reynaga") brought a racial discrimination claim against his employer, Sun Studs, Inc. ("Sun Studs"), under 42 U.S.C. § 1981. Reynaga alleged that Sun Studs allowed a hostile work environment to exist and that Sun Studs discriminated against him both by refusing to pay for certain training and by transferring him to a position with lower overtime opportunities and incentive bonuses.[1] The district court granted summary judgment in favor of Sun Studs, concluding that Reynaga presented insufficient evidence to sustain either the hostile work environment or discriminatory treatment claims. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm in part and reverse in part.

A grant of summary judgment is reviewed de novo. *Clicks Billiards Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir.2001). We must determine, viewing

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir. R. 36–3.

1. This alleged discrimination arises out of Sun Studs's decision in January 1999 to transfer Reynaga from its veneer plant to its sawmill plant.

the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.* Our task is not to weigh the evidence or to determine the truth of the matter, but rather only to determine whether there is a genuine issue for trial. *Balint v. Carson City,* 180 F.3d 1047, 1054 (9th Cir.1999) (en banc).[2]

■ For Reynaga to prevail on his claim of discriminatory treatment, he must first establish a prima facie case of discrimination. To do so, he must demonstrate that: (1) he was a member of a protected class; (2) he was satisfactorily performing his duties at work; (3) he suffered an adverse employment decision; and (4) he was treated differently than other persons outside of his protected class. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Viewing the record in the light most favorable to Reynaga, we conclude that the district court erred in ruling that Reynaga had not established his prima facie case. It is undisputed that Reynaga is a member of a protected class, and that he satisfactorily performed his work duties. There is historical evidence that overtime and incentive pay at the sawmill plant was lower than the veneer plant, suggesting at the summary judgment stage that the transfer of Reynaga was an "adverse employment decision." *See Fielder v. UAL Corp.,* 218 F.3d 973, 984 (9th Cir.2000) (observing that "[a]dverse employment actions include 'employer actions such as ... disadvantageous transfers or assignments'" (quoting *Wyatt v.*

*City of Boston,* 35 F.3d 13, 15 (1st Cir. 1994))), *petition for cert. filed,* 69 U.S.L.W. 3619 (U.S. Mar. 7, 2001) (No. 00–1397). And while white workers made up nearly 84% of the veneer plant workforce, only 50% were transferred to the less desirable sawmill plant,[3] leaving the remaining veneer force work over 90% white. Furthermore, although Reynaga was one of only two millwrights working at the veneer plant before being transferred, the millwright who remained at the veneer plant was both white and less experienced than Reynaga.

■ Once the employee adduces a prima facie case, the burden shifts to the employer to offer a nondiscriminatory explanation for the adverse action at issue. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). If the employer proffers such an explanation, the employee must then convince the trier of fact that this explanation is but a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Reynaga's supervisor, Clay Needham ("Needham"), asserts that Reynaga's transfer was part of a larger change due to a downturn in business and that he did not know that the sawmill transfer necessarily would result in less overtime and incentive pay. The latter assertion, however, is controverted by the historical fact that the opportunity to earn overtime and incentive pay at the lumber mill was substantially less than at the veneer plant and by evidence that this fact was widely known. These facts are sufficient at the summary judgment stage to undermine Needham's asserted non-dis-

---

**2.** The parties are familiar with the facts and we do not recite them.

**3.** Although the district court stated that "six employees were transferred [to the sawmill plant], one of whom is Hispanic, and one of whom is Indian," this is an incorrect reading of the record. In fact, *two* Hispanics (including Reynaga) and one Indian were transferred.

criminatory explanation for transferring Reynaga and to raise a controverted issue of fact on the question of pretext.

■ Reynaga also claims that he was subjected to a hostile work environment. He has adduced no evidence, however, that the harassment he experienced was sufficiently severe to present a cognizable violation of federal law. In determining whether a work environment is "hostile or abusive," the Supreme Court focuses on the " 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Reynaga points to four instances, or patterns of behavior, to establish workplace hostility: (1) placement of scrap metal, inscribed with the letters "RIP," near his work locker; (2) being called "amigo" by Jerry Long; (3) an isolated conversation between Ron Peterson and Paul Moran in which derogatory comments were made about Hispanics; and (4) workplace harassment experienced by other workers at Sun Studs.

This evidence, however, is insufficient as a matter of law to establish workplace hostility. There is no evidence either that the "RIP" sign was placed on account of Reynaga's ethnicity or that Sun Studs knowingly permitted the sign to remain in the workplace. The discriminatory comments heard by Reynaga were either too innocuous (in the case of being called "amigo") or too isolated (in the case of the overheard conversation) to create a "hostile or abusive" workplace. *Harris,* 510 U.S. at 21 (holding that the "mere utterance of an . . . epithet which engenders offensive feelings in a employee does not

sufficiently affect the conditions of employment" to create a hostile workplace) (internal quotations marks and citation omitted); *Faragher,* 524 U.S. at 788 (emphasizing that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks and citation omitted). The incidents related in affidavits of former Sun Studs employees were neither witnessed by Reynaga nor related to him while he was on the job; therefore, they do not suffice to establish a hostile work environment as to him.

■ Finally, Reynaga claims that he was subjected to discriminatory treatment because Sun Studs refused to pay for journeyman schooling. Although Sun Studs has sponsored journeyman schooling for electricians, Sun Studs argues that it has a business need for a journeyman electrician, but not for a journeyman millwright, and that it was for this reason alone that it did not approve Reynaga's request. Reynaga introduced no evidence to discredit this assertion. Furthermore, although Reynaga was never reimbursed under Sun Studs's Tuition Reimbursement Plan for two hydraulics courses that he took at the local community college, Reynaga admits that he never submitted a reimbursement request and that he is unaware of any employee who was reimbursed for education without having filed such a request.

Accordingly, the district court's grant of summary judgment on the hostile work environment claim and discriminatory treatment claim based on the employer's failure to pay for educational benefits is affirmed. The grant of summary judgment to Sun Studs on the discriminatory treatment claim based on Reynaga's transfer to the sawmill is reversed and remand-

ed for further proceedings. Each party shall bear his or its own costs on appeal.

**AFFIRMED in part, REVERSED and REMANDED in part.**